**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **LIVE FACE ON WEB, LLC,**<br>**a Pennsylvania company,**<br><br>      **Plaintiff,**<br><br>**vs.**<br><br>**JMB ENTERPRISES, INC., an Illinois**<br>**corporation, and KEVIN BAKER, an individual,**<br>**GOD BE GLORIFIED, INC. d/b/a GBG, Inc.,**<br>**an Illinois corporation, and CHARLES**<br>**HILSON, an individual, KAM**<br>**DEVELOPMENT, L.L.C. d/b/a GREEN**<br>**ENERGY AIR SEALING, an Illinois company,**<br>**and KIMBERLY RADOSTITS, an individual,**<br>**CREMATION SOCIETY OF ILLINOIS, INC.**<br>**d/b/a PETS ARE FAMILY, TOO CREMATION**<br>**SERVICES; OLSON BURKE/SULLIVAN**<br>**FUNERAL & CREMATION CENTER;**<br>**ILLINOIS CREMATION CENTERS, an Illinois**<br>**corporation, and KATIE SULLIVAN, an**<br>**individual, NAPERVILLE MUSIC, INC., an**<br>**Illinois corporation, ELI NICOLOSI**<br>**ILLUSTRATION & DESIGN, INC., an Illinois**<br>**corporation, and ELI NICOLOSI, an individual,**<br><br>      **Defendants.** | **Case No.: 1:16-CV-6275**<br><br>**JURY TRIAL REQUESTED** |

**COMPLAINT**

      Plaintiff Live Face on Web, LLC, through its undersigned counsel, and for its

Complaint against the Defendants listed above, alleges as follows:

## I.    THE PARTIES

1.    Plaintiff, Live Face on Web, LLC ("LFOW"), is a Pennsylvania limited liability company with its principal place of business at 1300 Industrial Boulevard, Suite 212, Southampton, PA 18966.

### JMB Defendants

2.    Upon information and belief, Defendant JMB Enterprises, Inc. ("JMB"), is an Illinois corporation with a principal place of business in this judicial district.

3.    Upon information and belief, Defendant Kevin Baker ("Baker"), is an individual residing in the State of Illinois in this judicial district, and a principal of JMB. Defendants JMB and Baker are collectively referred to herein as the "JMB Defendants."

### GBG Defendants

4.    Upon information and belief, Defendant God Be Glorified, Inc. d/b/a GBG, Inc. ("GBG"), is an Illinois corporation with a principal place of business at 40 W. 162nd St., South Holland, IL 60473.

5.    Upon information and belief, Defendant Charles Hilson is an individual residing in the State of Illinois in this judicial district, and a principal of Defendant GBG. Defendants GBG and Charles Hilson are collectively referred to herein as the "GBG Defendants."

### KAM Defendants

6.    Upon information and belief, Defendant KAM Development L.L.C. d/b/a Green Energy Air Sealing ("KAM"), is an Illinois corporation with a principal place of business at 707 N. Grove Ave, Oak Park, IL 60302.

7.     Upon information and belief, Defendant Kimberly Radostits ("Radostits"), is an individual residing in the State of Illinois in this judicial district, and a principal of KAM.  Defendants KAM and Radostits are collectively referred to herein as the "KAM Defendants."

### CSI Defendants

8.     Upon information and belief, Defendant Cremation Society of Illinois (d/b/a Pets Are Family, Too Cremation Services; Olson Burke/Sullivan Funeral & Cremation Center; and Illinois Cremation Centers) ("CSI"), is an Illinois corporation with a principal place of business in this judicial district.

9.     Upon information and belief, Defendant Katie Sullivan ("Sullivan"), is an individual residing in this judicial district, and a principal of CSI.  Defendants CSI and Sullivan are collectively referred to herein as the "CSI Defendants."

### Naperville Music

10.     Upon information and belief, Defendant Naperville Music, Inc. is an Illinois corporation with a principal place of business at 636 E. Ogden Ave., Naperville, IL 60563.  Defendant Naperville Music, Inc. is referred to herein as "Defendant Naperville Music."

### Nicolosi Defendants

11.     Upon information and belief, Defendant Eli Nicolosi Illustration & Design, Inc., is an Illinois corporation with a principal place of business located at 185 Buckley Drive, Unit 2, Rockford, IL 61107.

12.     Upon information and belief, Defendant Eli A. Nicolosi ("Nicolosi"), is an individual residing in this judicial district, and a principal of Eli Nicolosi Illustration &

Design, Inc. Defendants Eli Nicolosi Illustration & Design, Inc. and Nicolosi are collectively referred to herein as the "Nicolosi Defendants."

13.     The JMB Defendants, the GBG Defendants, the KAM Defendants, the CSI Defendants, Defendant Naperville Music, and the Nicolosi Defendants are collectively referred to herein as "Defendants."

## II.     JURISDICTION AND VENUE

14.     This action arising under the U.S. Copyright Act (17 U.S.C. §501 et seq.), and thus this Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

15.     As fully set forth herein, Defendants have used and distributed LFOW's software and/or infringing derivative works thereof, which are the subject of U.S. Copyright Registrations.

16.     This Court has personal jurisdiction over the Defendants because the Defendants have conducted business in, and have had continuous and systematic contacts with the State of Illinois and this District.

17.     Moreover, upon information and belief, the following individual defendants reside in the State of Illinois: Defendant Baker, Defendant Hilson, Defendant Radostits, Defendant Sullivan, and Defendant Nicolosi.

18.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and Defendants are located in this District.

### III.    PLAINTIFF'S BUSINESS AND COPYRIGHTED TECHNOLOGY

19.    LFOW is a developer and owner of "live person" software, which is an original work of authorship independently created by LFOW ("LFOW Software").

20.    The LFOW Software allows a company to display a video of a "walking" and "talking" personal host who introduces a website to an online visitor. The personal host is, in effect, a web spokesperson for the specific company for whom the video has been created. Typically the web spokesperson explains a company's products and/or services and directs a visitor's attention to a particular product or aspect of the website. The LFOW Software is representative of LFOW's advertising idea; LFOW (and its customers) advertise services and solicit business through the use of a website spokesperson, which is typically tailored to specific goods and services found on the associated website.

21.    The LFOW Software enables a company to customize and dynamically modify settings and functionality of the web spokesperson. By way of example, a customer utilizing the LFOW Software can: (a) manipulate the positioning of the web spokesperson on its website and select between static, relative or dynamic positioning features; (b) adjust the delay between the time an online visitor enters the website and the start time of the web spokesperson's presentation; (c) select the number of times a video presentation plays for each particular visitor; and (d) select "click on me" functionality that directs a user to a predetermined page or section of the website which promotes goods or services and/or reinforces the image and brand of the customer.

22.    The LFOW Software seeks to enhance a web site by using a real spokesperson to capture, hold and prolong the attention of the average online visitor,

enhancing the ability of the website to advertise specific goods and services. This technique has a direct positive impact on sales and/or the brand, public image and reputation of any company that has an online presence.

23.    Generally speaking, the LFOW Software can be implemented by LFOW's customers by modifying the HTML code of the LFOW customer's website. An HMTL script tag is embedded in the HTML code of the LFOW customer's website, which links the LFOW customer's website to a copy of the LFOW Software. An LFOW customer has the option of storing the copy of the LFOW Software on the same webserver(s) as the customer's website, or storing the copy of the LFOW Software on a different webserver(s) than the website. Many of LFOW's customers choose to have the copy of the LFOW Software stored on LFOW's webservers.

24.    Regardless of the particular webserver(s) where the LFOW Software is stored, the functionality and result is the same. When a web browser is directed to a website linked to the LFOW Software, the embedded HTML script tag is read by the web browser and causes the automatic distribution of a copy of the LFOW Software. The LFOW Software is automatically saved by the web browser into cache, and/or a hard drive(s), and loaded into computer memory and/or RAM (random access memory). As a result of the distribution of the LFOW Software, the specific web spokesperson video is automatically launched and displayed to advertise on the associated website.

25.    The LFOW Software is licensed to customers for a license fee by LFOW, which also receives fees for other services.

26.    The LFOW Software is also subject to the terms and conditions of LFOW's End User License Agreement ("EULA"). Since at least October 2007, LFOW

has included the web address where the EULA can be found, thus anyone who accessed any version of the LFOW Software since that time had notice of the EULA.

27.    LFOW has registered the LFOW Software. Pertinent to this action, on December 20, 2007, LFOW duly registered the copyright in the LFOW Software version 7.0.0, prior to the publication of version 7.0.0, in the United States Copyright Office, as evidenced by the certificate of registration for TXu001610441, which was issued by the Register of Copyrights. A true and accurate copy of the certificate of registration is attached hereto as Exhibit A, and a true and accurate copy of the deposit work for TXu001610441 is attached hereto as Exhibit A1.

## IV.    DEFENDANTS' COPYRIGHT INFRINGEMENT

### JMB Defendants

28.    JMB Defendants own, and/or operate and/or control the website http://www.checkbyphoneonline.net ("JMB Defendants' website"). A copy of the HTML source code for the JMB Defendants' website is found at Exhibit B.

29.    JMB Defendants' website advertises and promotes the products and/or services of JMB Defendants.

30.    Upon information and belief, JMB Defendants have used a web spokesperson video to promote JMB Defendants' products and/or services.

31.    Upon information and belief, in order to display the web spokesperson video on JMB Defendants' website, JMB Defendants used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

32.    Upon information and belief, JMB Defendants have the right and ability to modify their own website or to have their website modified on JMB Defendants' behalf.

33.     Upon information and belief, to implement the infringing version of the LFOW Software, the JMB Defendants' website was modified by or on behalf of JMB Defendants to include the following website source code and/or text, shown in Exhibit B: http://tweople.com/client/new_player.js?swf=http://tweople.com/client/new_main.swf&flv=http://flash.yourvideopartner.com/complete/1957.flv&start=normal&close=shrink&play_when=2&align_right=false&show_loading=yes&width=480&height=360&vlm=87&x_off=85.     This modification links the JMB Defendants' website to the file "new_player.js," an infringing version of the LFOW Software, which was stored for JMB Defendants on the webserver(s) for www.tweople.com. A copy of "new_player.js" is found at Exhibit C.

34.     As a result of the modification to the JMB Defendants' website referenced above, when a web browser retrieved a page from the JMB Defendants' website, a copy of the infringing version of the LFOW Software was distributed by JMB Defendants to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. Accordingly, each visit to the JMB Defendants' website was a new act of copyright infringement.

35.     Upon information and belief, infringement occurred at least during 2014, if not before. LFOW did not know or have reason to know of JMB Defendants' infringement until 2015.

36.     The infringing version of the LFOW Software, shown at Exhibit C is substantially similar to the LFOW Software, and includes one or more instances of "LFOW," which is a reference to LFOW. The infringing version of the LFOW Software also includes the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark

its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code

37.     The web spokesperson video that launched on JMB Defendants' website is a result of JMB Defendants' distribution of the infringing version of the LFOW Software, which, upon information and belief, advertised and promoted the products and/or services of JMB Defendants, encouraging the website viewer to purchase and/or use JMB Defendants' products and/or services, thereby providing a monetary benefit to JMB Defendants. Thus, JMB Defendants' copyright infringement of the LFOW Software was in their advertising, and the infringement is for the purpose of advertising their products and/or services.

38.     JMB Defendants intended for a copy of the infringing version of the LFOW Software to be distributed to website visitors in their advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by JMB Defendants to their website visitors was seamless and transparent for the website visitors, who, upon information and belief, were able to view the video spokesperson advertising JMB Defendants' products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

39.     JMB Defendants profited directly from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed JMB Defendants to more effectively promote and sell their products and/or services by capturing, holding and prolonging the attention of

9

the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of JMB Defendants.

40. The infringing version of the LFOW Software has been used as a sales and advertising tool for JMB Defendants to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW Software by JMB Defendants did in fact generate revenues and profits for JMB Defendants, as more fully described below.

41. JMB Defendants unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which JMB Defendants did not pay applicable license fees and video production fees to LFOW.

42. The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the JMB Defendants' website constitutes infringement of LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

43. As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

44. As a result of foregoing conduct of JMB Defendants, LFOW has suffered significant harm and loss.

45. Upon information and belief, JMB Defendants actively induced end users to visit their website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times. The actual number can only be ascertained through discovery.

46.     JMB Defendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the JMB Defendants' website(s) and refused to exercise their ability to stop the infringement made possible by the modification and continuous operation of their website(s).

47.     As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

48.     Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against JMB Defendants for each act of copyright infringement.

49.     Where JMB Defendants initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

**GBG Defendants**

50.     GBG Defendants own, and/or operate and/or control the website http://www.gbgins.com ("GBG Defendants' website"). A copy of the HTML source code for the GBG Defendants' website is found at Exhibit D.

51.     GBG Defendants' website advertises and promotes the products and/or services of GBG Defendants.

52.     Upon information and belief, GBG Defendants have used a web spokesperson video to promote GBG Defendants' products and/or services.

11

53. Upon information and belief, in order to display the web spokesperson video on Defendants' website, GBG Defendants used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

54. Upon information and belief, GBG Defendants have the right and ability to modify their own website or to have their website modified on GBG Defendants' behalf.

55. Upon information and belief, to implement the infringing version of the LFOW Software, the GBG Defendants' website was modified by or on behalf of GBG Defendants to include the following website source code and/or text, shown in Exhibit D: http://tweople.com/client/new_player.js?swf=http://tweople.com/client/new_main.swf&flv=http://flash.yourvideopartner.com/complete/2941a.flv&start=mini&close=close&play_when=1&align_right=false&show_loading=yes&width=480&height=360&vlm=80&x_off=170. This modification links the GBG Defendants' website to the file "new_player.js," an infringing version of the LFOW Software, which was stored for GBG Defendants on the webserver(s) for www.tweople.com. A copy of "new_player.js" is found at Exhibit E.

56. As a result of the modification to the GBG Defendants' website referenced above, when a web browser retrieved a page from the GBG Defendants' website, a copy of the infringing version of the LFOW Software was distributed by GBG Defendants to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. Accordingly, each visit to the GBG Defendants' website was a new act of copyright infringement.

57.     Upon information and belief, infringement occurred at least during 2014, if not before. LFOW did not know or have reason to know of GBG Defendants' infringement until 2015.

58.     The infringing version of the LFOW Software, shown at Exhibit E, is substantially similar to the LFOW Software, and includes one or more instances of "LFOW," which is a reference to LFOW. The infringing version of the LFOW Software also includes the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code.

59.     The web spokesperson video that launched on GBG Defendants' website is a result of Defendants' distribution of the infringing version of the LFOW Software, which, upon information and belief, advertised and promoted the products and/or services of GBG Defendants, encouraging the website viewer to purchase and/or use GBG Defendants' products and/or services, thereby providing a monetary benefit to GBG Defendants. Thus, GBG Defendants' copyright infringement of the LFOW Software is in its advertising, and the infringement is for the purpose of advertising its products and/or services.

60.     GBG Defendants intended for a copy of the infringing version of the LFOW Software to be distributed to website visitors in their advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by GBG Defendants to their website visitors was seamless and transparent for the website visitors,

who, upon information and belief, were able to view the video spokesperson advertising GBG Defendants' products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

61.     GBG Defendants profited directly from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed GBG Defendants to more effectively promote and sell their products and/or services by capturing, holding and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of GBG Defendants.

62.     The infringing version of the LFOW Software has been used as a sales and advertising tool for GBG Defendants to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW Software by GBG Defendants did in fact generate revenues and profits for GBG Defendants, as more fully described below.

63.     GBG Defendants unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which GBG Defendants did not pay applicable license fees and video production fees to LFOW.

64.     The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the GBG Defendants' website constitutes infringement of LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

65. As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

66. As a result of foregoing conduct of GBG Defendants, LFOW has suffered significant harm and loss.

67. Upon information and belief, GBG Defendants actively induced end users to visit their website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times. The actual number can only be ascertained through discovery.

68. GBG Defendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the GBG Defendants' website(s) and refused to exercise their ability to stop the infringement made possible by the modification and continuous operation of their website(s).

69. As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

70. Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against GBG Defendants for each act of copyright infringement.

71. Where GBG Defendants initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

**KAM Defendants**

72.     KAM Defendants own, and/or operate and/or control the website http://www.greenenergyairsealing.com ("KAM Defendants' website"). A copy of the HTML source code for the KAM Defendants' website is found at Exhibit F.

73.     KAM Defendants' website advertises and promotes the products and/or services of Defendants.

74.     Upon information and belief, KAM Defendants have used a web spokesperson video to promote KAM Defendants' products and/or services.

75.     Upon information and belief, in order to display the web spokesperson video on KAM Defendants' website, KAM Defendants used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

76.     Upon information and belief, KAM Defendants have the right and ability to modify their own website or to have their website modified on KAM Defendants' behalf.

77.     Upon information and belief, KAM Defendants copied and stored an infringing version of the LFOW Software on the webserver(s) for http://www.greenenergyairsealing.com.

78.     Upon information and belief, to implement the infringing version of the LFOW Software, the KAM Defendants' website was modified by or on behalf of KAM Defendants to include the following website source code and/or text, shown in Exhibit F: http://greenenergyairsealing.com/wp-content/themes/geas-theme/js/intro-player/new_player.js?swf=http://greenenergyairsealing.com/wp-content/themes/geas-theme/js/intro-player/new_main.swf&flv=http://greenenergyairsealing.com/wp-

content/themes/geas-theme/js/intro-player/intro-video.flv&start=normal&close=close&play_when=1&align_right=false&show_loading=yes&width=480&height=360&vlm=80&x_off=155. This modification links the KAM Defendants' website to the file "new_player.js," an infringing version of the LFOW Software, which was stored on KAM Defendants' webserver(s). A copy of "new_player.js" is found at Exhibit G.

79. As a result of the modification to the KAM Defendants' website referenced above, when a web browser retrieves a page from the KAM Defendants' website, a copy of the infringing version of the LFOW Software is distributed by KAM Defendants to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. Accordingly, each visit to the KAM Defendants' website is a new act of copyright infringement.

80. The infringing version of the LFOW Software, shown at Exhibit G is substantially similar to the LFOW Software, and includes one or more instances of "LFOW," which is a reference to LFOW. The infringing version of the LFOW Software also includes the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code

81. The web spokesperson video that launched on KAM Defendants' website is a result of KAM Defendants' distribution of the infringing version of the LFOW Software, which advertises and promotes the products and/or services of KAM Defendants, encouraging the website viewer to purchase and/or use KAM Defendants'

products and/or services, thereby providing a monetary benefit to KAM Defendants. Thus, KAM Defendants' copyright infringement of the LFOW Software is in their advertising, and the infringement is for the purpose of advertising their products and/or services.

82.     KAM Defendants intend for a copy of the infringing version of the LFOW Software to be distributed to website visitors in their advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by KAM Defendants to their website visitors is seamless and transparent for the website visitors, who were able to view the video spokesperson advertising KAM Defendants' products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

83.     KAM Defendants profit directly from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software allows KAM Defendants to more effectively promote and sell their products and/or services by capturing, holding and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of KAM Defendants.

84.     The infringing version of the LFOW Software is a sales and advertising tool for KAM Defendants to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW Software by KAM Defendants did in fact generate revenues and profits for KAM Defendants, as more fully described below.

85. KAM Defendants unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which KAM Defendants did not pay applicable license fees and video production fees to LFOW.

86. The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the KAM Defendants' website constitutes infringement of LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

87. As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

88. As a result of foregoing conduct of KAM Defendants, LFOW has suffered significant harm and loss.

89. Upon information and belief, KAM Defendants actively induced end users to visit their website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times. The actual number can only be ascertained through discovery.

90. KAM Defendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the KAM Defendants' website(s) and refused to exercise their ability to stop the infringement made possible by the modification and continuous operation of their website(s).

91. As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

92. Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against KAM Defendants for each act of copyright infringement.

93. Where KAM Defendants initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

**CSI Defendants**

94. CSI Defendants own, and/or operate and/or control the websites http://www.illinoiscasketdepot.com, http://www.illinoiscremationcenters.com, http://www.petsarefamilytoo.net, and http://www.obsfuneralandcremation.com ("CSI Defendants' websites"). A copy of the HTML source code for the CSI Defendants' websites is found at Exhibits H1, H2, H3, and H4, respectively.

95. CSI Defendants' websites advertise and promote the products and/or services of Defendants.

96. Upon information and belief, CSI Defendants have used a web spokesperson video to promote CSI Defendants' products and/or services.

97. Upon information and belief, in order to display the web spokesperson video on CSI Defendants' websites, CSI Defendants used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

98. Upon information and belief, CSI Defendants have the right and ability to modify their own websites or to have their websites modified on CSI Defendants' behalf.

99.    Upon information and belief, CSI Defendants copied and stored an infringing version of the LFOW Software on the webserver(s) for http://www.illinoiscasketdepot.com and http://www.illinoiscremationcenters.com.

100.    Upon information and belief, to implement the infringing version of the LFOW Software, http://illinoiscasketdepot.com/ and http://illinoiscremationcenters.com/ were modified by or on behalf of CSI Defendants to include the following website source code and/or text, shown in Exhibit H1: http://illinoiscasketdepot.com/new_player.js?swf=http://illinoiscasketdepot.com/new_main.swf&flv=http://illinoiscasketdepot.com/1197b.flv&start=normal&close=close&play_when=1&align_right=true&show_loading=yes&width=480&height=360&vlm=80&x_off=180;                and                Exhibit                H2: http://illinoiscremationcenters.com/video/ip_player/ip_player.js?swf=http://illinoiscremationcenters.com/video/ip_player/new_main.swf&amp;flv=http://illinoiscremationcenters.com/video/1203220A.flv&amp;start=normal&amp;close=close&amp;play_when=1&amp;align_right=false&amp;show_loading=no&amp;width=480&amp;height=360&amp;vlm=80&amp;x_off=175.  These modifications link the CSI Defendants' websites to the files "new_player.js" and "ip_player.js," infringing versions of the LFOW Software, which are and/or were stored on CSI Defendants' webserver(s).  Copies of "new_player.js" and "ip_player.js" are found at Exhibit I1 and Exhibit I2 respectively.

101.    Upon information and belief, to implement an infringing version of the LFOW Software, http://www.petsarefamilytoo.net was modified by or on behalf of CSI Defendants to include the following website source code and/or text, shown in Exhibit H3:

http://greenenergyairsealing.com/new_player.js?swf=http://greenenergyairsealing.com/ne w_main.swf&amp;flv=http://petsarefamilytoo.net/2975a.flv&amp;start=normal&amp;clo se=close&amp;play_when=1&amp;align_right=false&amp;show_loading=yes&amp;wid th=480&amp;height=360&amp;vlm=80&amp;x_off=155. This modification links the CSI Defendants' website to the file "new_player.js," an infringing version of the LFOW Software, which was stored for CSI Defendants on the webserver(s) for www.greenenergyairsealing.com. A copy of "new_player.js" is found at Exhibit I3.

102.     Upon information and belief, to implement an infringing version of the LFOW Software, http://www.obsfuneralandcremation.com was modified by or on behalf of CSI Defendants to include the following website source code and/or text, shown in Exhibit                                                                                     H4: http://tweople.com/client/new_player.js?swf=http://tweople.com/client/new_main.swf&a mp;flv=http://flash.yourvideopartner.com/complete/2932b.flv&amp;start=mini&amp;clo se=close&amp;play_when=1&amp;align_right=false&amp;show_loading=yes&amp;wid th=480&amp;height=360&amp;vlm=80&amp;x_off=170. This modification links the CSI Defendants' website to the file "new_player.js," an infringing version of the LFOW Software, which was stored for CSI Defendants on the webserver(s) for www.tweople.com. A copy of "new_player.js" is found at Exhibit I4.

103.     As a result of the modification to the CSI Defendants' websites referenced above, when a web browser retrieves and/or retrieved a page from the CSI Defendants' website, a copy of the infringing version of the LFOW Software is, and was, distributed by CSI Defendants to the website visitor and stored on the visitor's computer in cache,

memory and/or its hard drive. Accordingly, each visit to the CSI Defendants' website is, and was, a new act of copyright infringement.

104.    The infringing versions of the LFOW Software, shown at Exhibits I1, I2, I3, and I4, are substantially similar to the LFOW Software, and each include one or more instances of "LFOW," which is a reference to LFOW. The infringing versions of the LFOW Software also include the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code

105.    The web spokesperson video that launched on CSI Defendants' website is a result of CSI Defendants' distribution of the infringing version of the LFOW Software, which, upon information and belief, advertises, and advertised, and promotes, and promoted, the products and/or services of CSI Defendants, encouraging the website viewer to purchase and/or use CSI Defendants' products and/or services, thereby providing a monetary benefit to CSI Defendants. Thus, CSI Defendants' copyright infringement of the LFOW Software is, and was, in their advertising, and the infringement is for the purpose of advertising their products and/or services.

106.    CSI Defendants intended for a copy of the infringing version of the LFOW Software to be distributed to website visitors in their advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by CSI Defendants to their website visitors was seamless and transparent for the website visitors, who, upon information and belief, were, and are, able to view the video spokesperson advertising

CSI Defendants' products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

107.    CSI Defendants profit, and profited, directly from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allows, and allowed, Defendants to more effectively promote and sell their products and/or services by capturing, holding and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of CSI Defendants.

108.    The infringing version of the LFOW Software is, and has been, used as a sales and advertising tool for CSI Defendants to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW Software by CSI Defendants did in fact generate revenues and profits for CSI Defendants, as more fully described below.

109.    CSI Defendants unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which CSI Defendants did not pay applicable license fees and video production fees to LFOW.

110.    The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the CSI Defendants' website constitutes infringement of LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

111.    As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

112.     As a result of foregoing conduct of CSI Defendants, LFOW has suffered significant harm and loss.

113.     Upon information and belief, CSI Defendants actively induced end users to visit their website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times.  The actual number can only be ascertained through discovery.

114.     CSI Defendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the CSI Defendants' website(s) and refused to exercise their ability to stop the infringement made possible by the modification and continuous operation of their website(s).

115.     As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

116.     Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against CSI Defendants for each act of copyright infringement.

117.     Where CSI Defendants initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

**Defendant Naperville Music**

118.     Defendant Naperville Music owns, and/or operates and/or controls the website http://www.napervillemusic.com ("Defendant Naperville Music's website"). A

copy of the HTML source code for the Defendant Naperville Music's website is found at Exhibit J.

119.     Defendant Naperville Music's website advertises and promotes the products and/or services of Defendant Naperville Music.

120.     Upon information and belief, Defendant Naperville Music has used a web spokesperson video to promote Defendant Naperville Music's products and/or services.

121.     Upon information and belief, in order to display the web spokesperson video on Defendant Naperville Music's website, Defendant Naperville Music used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

122.     Upon information and belief, Defendant Naperville Music has the right and ability to modify its own website or to have its website modified on Defendant Naperville Music's behalf.

123.     Upon information and belief, to implement the infringing version of the LFOW Software, the Defendant Naperville Music's website was modified by or on behalf of Defendant Naperville Music to include the following website source code and/or text, shown in Exhibit J: http://tweople.com/client/multi_new.js.php?id=295.   A copy of the "multi_new.js" file is found at Exhibit J1 and links to the file "playerbase-multi.js," an infringing version of the LFOW Software, which was stored for Defendant Naperville Music on the webserver(s) for www.tweople.com. A copy of "playerbase-multi.js" is found at Exhibit K.

124.     As a result of the modification to the Defendant Naperville Music's website referenced above, when a web browser retrieved a page from the Defendant

Naperville Music's website, a copy of the infringing version of the LFOW Software was distributed by Defendant Naperville Music to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. Accordingly, each visit to the Defendant Naperville Music's website was a new act of copyright infringement.

125.    Upon information and belief, infringement occurred at least during 2013, if not before. LFOW did not know or have reason to know of Defendant Naperville Music's infringement until 2015.

126.    The infringing version of the LFOW Software, shown at Exhibit K is substantially similar to the LFOW Software, and includes one or more instances of "LFOW," which is a reference to LFOW. The infringing version of the LFOW Software also includes the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code

127.    The web spokesperson video that launched on Defendant Naperville Music's website is a result of Defendant Naperville Music's distribution of the infringing version of the LFOW Software, which, upon information and belief, advertised and promoted the products and/or services of Defendant Naperville Music, encouraging the website viewer to purchase and/or use Defendant Naperville Music's products and/or services, thereby providing a monetary benefit to Defendant Naperville Music. Thus, Defendant Naperville Music's copyright infringement of the LFOW Software was in its advertising, and the infringement is for the purpose of advertising its products and/or services.

128.    Defendant Naperville Music intended for a copy of the infringing version of the LFOW Software to be distributed to website visitors in its advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by Defendant Naperville Music to its website visitors was seamless and transparent for the website visitors, who, upon information and belief, were able to view the video spokesperson advertising Defendant Naperville Music's products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

129.    Defendant Naperville Music profited directly from and has a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed Defendant Naperville Music to more effectively promote and sell its products and/or services by capturing, holding and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of Defendant Naperville Music.

130.    The infringing version of the LFOW Software has been used as a sales and advertising tool for Defendant Naperville Music to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW Software by Defendant Naperville Music did in fact generate revenues and profits for Defendant Naperville Music, as more fully described below.

131.    Defendant Naperville Music unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which Defendant Naperville Music did not pay applicable license fees and video production fees to LFOW.

132.    The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the Defendant Naperville Music's website constitutes infringement of LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

133.    As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

134.    As a result of foregoing conduct of Defendant Naperville Music, LFOW has suffered significant harm and loss.

135.    Upon information and belief, Defendant Naperville Music actively induced end users to visit its website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times.  The actual number can only be ascertained through discovery.

136.    Defendant Naperville Music has caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the Defendant Naperville Music's website(s) and refused to exercise its ability to stop the infringement made possible by the modification and continuous operation of its website(s).

137.    As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

138.    Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against Defendant Naperville Music for each act of copyright infringement.

139.     Where Defendant Naperville Music initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

**Nicolosi Defendants**

140.     Nicolosi Defendants own, and/or operate and/or control the website http://www.webpagedesignchicago.com ("Nicolosi Defendants' website"). A copy of the HTML source code for the Nicolosi Defendants' website is found at Exhibit L.

141.     Nicolosi Defendants' website advertises and promotes the products and/or services of Nicolosi Defendants.

142.     Upon information and belief, Nicolosi Defendants have used a web spokesperson video to promote Nicolosi Defendants' products and/or services.

143.     Upon information and belief, in order to display the web spokesperson video on Nicolosi Defendants' website, Nicolosi Defendants used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

144.     Upon information and belief, Nicolosi Defendants have the right and ability to modify their own website or to have their website modified on Nicolosi Defendants' behalf.

145.     Upon information and belief, to implement the infringing version of the LFOW Software, the Nicolosi Defendants' website was modified by or on behalf of Nicolosi Defendants to include the following website source code and/or text, shown in Exhibit L: http://tweople.com/client/multi_new.js.php?id=207.     A copy of the

"multi_new.js" file is found at Exhibit L1 and links to the file "playerbase-multi.js," an infringing version of the LFOW Software, which was stored for Nicolosi Defendants on the webserver(s) for www.tweople.com. A copy of "playerbase-multi.js" is found at Exhibit M.

146.    As a result of the modification to the Nicolosi Defendants' website referenced above, when a web browser retrieved a page from the Nicolosi Defendants' website, a copy of the infringing version of the LFOW Software was distributed by Nicolosi Defendants to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. Accordingly, each visit to the Nicolosi Defendants' website was a new act of copyright infringement.

147.    Upon information and belief, infringement occurred at least during 2014, if not before. LFOW did not know or have reason to know of Nicolosi Defendants' infringement until 2015.

148.    The infringing version of the LFOW Software, shown at Exhibit M is substantially similar to the LFOW Software, and includes one or more instances of "LFOW," which is a reference to LFOW. The infringing version of the LFOW Software also includes the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code

149.    The web spokesperson video that launched on Nicolosi Defendants' website is a result of Nicolosi Defendants' distribution of the infringing version of the LFOW Software, which, upon information and belief, advertised and promoted the

products and/or services of Nicolosi Defendants, encouraging the website viewer to purchase and/or use Nicolosi Defendants' products and/or services, thereby providing a monetary benefit to Nicolosi Defendants. Thus, Nicolosi Defendants' copyright infringement of the LFOW Software was in their advertising, and the infringement is for the purpose of advertising their products and/or services.

150.    Nicolosi Defendants intended for a copy of the infringing version of the LFOW Software to be distributed to website visitors in their advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by Nicolosi Defendants to their website visitors was seamless and transparent for the website visitors, who, upon information and belief, were able to view the video spokesperson advertising Nicolosi Defendants' products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

151.    Nicolosi Defendants profited directly from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed Nicolosi Defendants to more effectively promote and sell their products and/or services by capturing, holding and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of Nicolosi Defendants.

152.    The infringing version of the LFOW Software has been used as a sales and advertising tool for Nicolosi Defendants to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW

32

Software by Nicolosi Defendants did in fact generate revenues and profits for Nicolosi Defendants, as more fully described below.

153. Nicolosi Defendants unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which Nicolosi Defendants did not pay applicable license fees and video production fees to LFOW.

154. The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the Nicolosi Defendants' website constitutes infringement of LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

155. As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

156. As a result of foregoing conduct of Nicolosi Defendants, LFOW has suffered significant harm and loss.

157. Upon information and belief, Nicolosi Defendants actively induced end users to visit their website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times. The actual number can only be ascertained through discovery.

158. Nicolosi Defendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the Nicolosi Defendants' website(s) and refused to exercise their ability to stop the infringement made possible by the modification and continuous operation of their website(s).

159.    As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

160.    Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against Nicolosi Defendants for each act of copyright infringement.

161.    Where Nicolosi Defendants initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

<u>**COUNT ONE**</u>

**Copyright Infringement**

162.    LFOW incorporates by reference the averments contained in the preceding paragraphs above, as if set forth fully herein.

163.    Count One is an action under 17 U.S.C. § 501 for direct, indirect and/or vicarious infringement of registered copyright(s) as against the Defendants named in this Complaint.

164.    LFOW is the owner of valid copyright registration TXu001610441.

165.    LFOW has complied in all respects with the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq., and all other laws governing copyright to secure the exclusive rights and privileges in and to the copyrights of the items identified herein.

**JMB Defendants**

166.    The infringing version of the LFOW Software used and distributed by JMB Defendants is at least substantially similar to the LFOW Software protected by TXu001610441.

167.    JMB Defendants, through their agent(s), vendor(s), officer(s), and/or employee(s), modified JMB Defendants' website to cause the copying, use and distribution of the infringing version of the LFOW Software.

168.    The copying, use and distribution of the infringing version of the LFOW Software by JMB Defendants results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of JMB Defendants' infringement.

169.    JMB Defendants intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s).

170.    JMB Defendants profited from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed JMB Defendants to more effectively promote and sell their product(s) and/or service(s) on their own website(s) by capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of JMB Defendants.

171.    Because JMB Defendants own, operate and/or control their website, JMB Defendants also had the right and ability to supervise and control the infringement and

infringer by virtue of their ownership and control of their own website, but failed to do so.

172.     Where JMB Defendants initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

**GBG Defendants**

173.     The infringing version of the LFOW Software used and distributed by GBG Defendants is at least substantially similar to the LFOW Software protected by TXu001610441.

174.     GBG Defendants, through their agent(s), vendor(s), officer(s), and/or employee(s), modified GBG Defendants' website to cause the copying, use and distribution of the infringing version of the LFOW Software.

175.     The copying, use and distribution of the infringing version of the LFOW Software by GBG Defendants results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of GBG Defendants' infringement.

176.     GBG Defendants intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s).

177.     GBG Defendants profited from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed GBG Defendants to more effectively promote and sell their product(s) and/or service(s) on their own website(s) by capturing, holding, and

prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of GBG Defendants.

178.    Because GBG Defendants own, operate and/or control their website, GBG Defendants also had the right and ability to supervise and control the infringement and infringer by virtue of their ownership and control of their own website, but failed to do so.

179.    Where GBG Defendants initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

## KAM Defendants

180.    The infringing version of the LFOW Software used and distributed by KAM Defendants is at least substantially similar to the LFOW Software protected by TXu001610441.

181.    KAM Defendants, through their agent(s), vendor(s), officer(s), and/or employee(s), modified KAM Defendants' website to cause the copying, use and distribution of the infringing version of the LFOW Software.

182.    The past and ongoing copying, use and distribution of the infringing version of the LFOW Software by KAM Defendants results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of KAM Defendants' infringement.

183.    KAM Defendants intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW

Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s).

184.     KAM Defendants profited from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software allows KAM Defendants to more effectively promote and sell their product(s) and/or service(s) on their own website(s) by capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of KAM Defendants.

185.     Because KAM Defendants own, operate and/or control their website, KAM Defendants also have the right and ability to supervise and control the infringement and infringer by virtue of their ownership and control of their own website, but failed to do so.

186.     Where KAM Defendants initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

**CSI Defendants**

187.     The infringing version of the LFOW Software used and distributed by CSI Defendants is at least substantially similar to the LFOW Software protected by TXu001610441.

188.     CSI Defendants, through their agent(s), vendor(s), officer(s), and/or employee(s), modified CSI Defendants' website to cause the copying, use and distribution of the infringing version of the LFOW Software.

38

189.     The copying, use and distribution of the infringing version of the LFOW Software by CSI Defendants results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of CSI Defendants' infringement.

190.     CSI Defendants intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s).

191.     CSI Defendants profited from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allows, and allowed, CSI Defendants to more effectively promote and sell their product(s) and/or service(s) on their own website(s) by capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of CSI Defendants.

192.     Because CSI Defendants own, operate and/or control their website, CSI Defendants also had the right and ability to supervise and control the infringement and infringer by virtue of their ownership and control of their own website, but failed to do so.

193.     Where CSI Defendants initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

**Defendant Naperville Music**

194.    The infringing version of the LFOW Software used and distributed by Defendant Naperville Music is at least substantially similar to the LFOW Software protected by TXu001610441.

195.    Defendant Naperville Music, its agent(s), vendor(s), officer(s), and/or employee(s), modified Defendant Naperville Music's website to cause the copying, use and distribution of the infringing version of the LFOW Software.

196.    The copying, use and distribution of the infringing version of the LFOW Software by Defendant Naperville Music results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of Defendant Naperville Music's infringement.

197.    Defendant Naperville Music intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW Software via its website(s) and/or seeking out the LFOW Software in order to use it on its website(s).

198.    Defendant Naperville Music profited from and has a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed Defendant Naperville Music to more effectively promote and sell its product(s) and/or service(s) on its own website(s) by capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of Defendant Naperville Music.

199. Because Defendant Naperville Music owns, operates and/or controls its website, Defendant Naperville Music also had the right and ability to supervise and control the infringement and infringer by virtue of its ownership and control of its own website, but failed to do so.

200. Where Defendant Naperville Music initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

**Nicolosi Defendants**

201. The infringing version of the LFOW Software used and distributed by Nicolosi Defendants is at least substantially similar to the LFOW Software protected by TXu001610441.

202. Nicolosi Defendants, through their agent(s), vendor(s), officer(s), and/or employee(s), modified Nicolosi Defendants' website to cause the copying, use and distribution of the infringing version of the LFOW Software.

203. The copying, use and distribution of the infringing version of the LFOW Software by Nicolosi Defendants results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of Nicolosi Defendants' infringement.

204. Nicolosi Defendants intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s).

41

205.    Nicolosi Defendants profited from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software, upon information and belief, allowed Nicolosi Defendants to more effectively promote and sell their product(s) and/or service(s) on their own website(s) by capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of Nicolosi Defendants.

206.    Because Nicolosi Defendants own, operate and/or control their website, Nicolosi Defendants also had the right and ability to supervise and control the infringement and infringer by virtue of their ownership and control of their own website, but failed to do so.

207.    Where Nicolosi Defendants initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

**All Defendants**

208.    Pursuant to 17 U.S.C. §§ 503(a) and 503(b), LFOW is entitled to an order impounding the infringing articles and the means by which such infringing articles were produced and/or reproduced.

209.    Pursuant to 17 U.S.C. § 504, LFOW is also entitled to recover actual damages and any profits of Defendants, or, alternatively, to recover statutory damages of up to $150,000 for each work infringed.

210.    Pursuant to 17 U.S.C. § 505, LFOW is entitled to an award of attorneys' fees and costs.

WHEREFORE, LFOW asks this Court to enter preliminary and final orders and judgments as necessary to provide LFOW the following requested relief:

a) Finding Defendants liable for copyright infringement by virtue of Defendants' unauthorized use of LFOW's Software;

b) Finding Defendants' copyright infringement to be voluntary and an intentional violation of Defendants' known duties, and therefore willful;

c) An award of damages against Defendants under §504;

d) An award under 17 U.S.C. § 505 allowing recover of the full costs of this action, including LFOW's reasonable attorneys' fees and costs; and

e) Such and other relief as the Court deems appropriate.

## JURY DEMAND

LFOW demands a jury trial on all issues so triable.

**DATED:** June 16, 2016

Respectfully submitted,

*/s/ Michael P. Kella*
Anthony G. Simon (#6209056)
Michael P. Kella (#6307908)
THE SIMON LAW FIRM, P.C.
800 Market Street, Suite 1700
Saint Louis, Missouri 63101
Telephone: (314) 241-2929
Facsimile: (314) 241-2029
asimon@simonlawpc.com
mkella@simonlawpc.com

Counsel for Plaintiff,
Live Face on Web, LLC